IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:16cr 227 |
| | ) | |
| HARIS QAMAR | ) | |

POSITION OF THE UNITED STATES
<u>WITH RESPECT TO SENTENCING FACTORS</u>

In accordance with Section 6A1.2 of the *Sentencing Guidelines* and this Court's policy

regarding guideline sentencing, the government hereby represents that it has reviewed the

Probation Office's presentence report and that it does not dispute any of the factors or facts set

out therein.  Because the guideline range of is accurately calculated at 292 to 365 months but the

statutory maximum is 240 months, the guideline sentence is 240 months in prison.

As philosopher Karl Popper wrote in *The Open Society and Its Enemies*, "if we are not

prepared to defend a tolerant society against the onslaught of the intolerant, then the tolerant will

be destroyed, and tolerance with them."  Further, Popper wrote, "[w]e should therefore claim, in

the name of tolerance, the right not to tolerate the intolerant."  In accordance with our right not to

tolerate the intolerant - - as well as the calculations of the PSR - - the Court should sentence the

defendant to a long prison sentence.

Facts

In July 2014, Abu Bakr al-Baghdadi declared the Islamic State a caliphate and anointed

himself the Caliph, or leader, of the organization.  The Islamic State promotes its savagery

through conventional media sources and modern social media outlets.  It publicly distributes

videotaped beheadings of American journalists and humanitarian aid workers.  It torched a foreign soldier held captive in a cage and distributed the video of his brutal death.  It promotes and engages in the widespread slaughter, rape and enslavement of religious minorities. The Islamic State's savagery does not respect any boundaries, moral or geographic, and the organization continues to promote and inspire violent acts, including within the United States. Between 2014 and 2016, Haris Qamar found this organization appealing.  As soon as al-Baghdadi declared his caliphate, Qamar fixated on serving it.

The facts of this case are described in large part in the presentence report ("PSR"). Reliance on the facts contained in the PSR alone, however, understates the ferocity of the violent ideology to which Qamar adhered, as well as the length of time he was devoted to it.  Qamar's attempts to support ISIS were not discrete episodes in an otherwise ordinary adult life, nor in any way out of character for him.  Further, his attempt to join ISIS in 2014 was not discrete from his attempt to support ISIS in 2016; the two incidents were connected by a consistent course of conduct that spanned virtually all of that time.  As a result, one cannot properly evaluate the 3553(a) factors for Qamar without at least considering his bloodthirsty expressions of support for violence and terrorists in 2015 and 2016.

In addition to the facts contained in the PSR, the following information (all of which is documented on screenshots, recordings, and/or Qamar's admissions) should be considered:

As recounted in Paragraph 7 of the PSR, the Statement of Facts provides that "[i]n 2015 and 2016, Qamar used scores of variations of the handle "newerajihadi" (such as "newerajihadi21; newerajihadi22; newerajihadi23, etc.) to make posts on Twitter that were

openly supportive of the Islamic State.  The following items are examples of the Twitter posts

that were openly supportive of the Islamic State but that were not included in the PSR:

      1.  On September 16, 2015, from Twitter account with handle @newerajihadi20, Qamar tweeted his prayer that Allah "give strength to the mujahideen to slaughter every single US military officer."

      2.  On November 2, 2015, Qamar used as his profile photograph on the Twitter account with the handle @newerajihadi21, a photograph of an ISIL member and murderer known as "Jihadi John," beheading a purported Syrian pilot.  That photograph comes from a still image of a video depicting "Jihadi John" and several other ISIL terrorists beheading a group of purported Syrian pilots.  In the video, "Jihadi John" speaks to President Obama, saying that "today, we're slaughtering the soldiers of Bashar [Syrian President Bashar Al-Assad], and tomorrow we will be slaughtering your soldiers."  In the video, "Jihadi John" goes on to say that ISIL "will begin to slaughter your people on your streets."

      3.  On November 6, 2015, Qamar used the Twitter account with the handle @newerajihadi23 to tweet his prayer that Europe would be conquered "and Auschwitz will be opened again" for non-believers.

      4.  On November 13, 2015, ISIL terrorists attacked civilians at multiple locations in Paris, France, and murdered more than 100 people.  On November 17, 2015, Qamar used as his profile photograph on the Twitter account with the handle @newerajihadi26, a photograph of dead bodies and blood on the floor of the Bataclan theatre, where ISIL terrorists murdered over 80 people.

      5.  On March 15, 2016, Qamar used the Twitter account with the handle @newerajihadi77 to post a photograph containing the media logo for ISIL's media group, and depicting ISIL terrorists trying to tear the heads off of two prisoners of ISIL whose throats had just been slit so deep that they were nearly decapitated.  Qanar tweeted this photograph to another Twitter user stating "lol don't worry we r coming for you heathens."

At Paragraph 8, the presentence report accurately notes that Qamar expressed his love of

and thirst for violence.   The following items are additional examples of his blood-curdling

statements that were recorded by the confidential witness (herein referred to "CW"), but *not*

included within the presentence report:

3

6. On October 2, 2015, Qamar said that he loved the bodies, blood and beheadings. Qamar said that, when it comes to brutality on the kuffar, he had an "unlimited appetite."

7. "Flames of War" is a 55-minute long video released by ISIS and narrated by an individual speaking English with an American accent. The film highlights the Islamic State's seizure of a Syrian Army base near Raqah, Syria, and shows captured Syrian soldiers being shot point-blank in the back of the head and then falling into the graves that they had just been forced to dig. The film finishes with a statement from Abu Bakr Al-Baghdadi, the leader of the Islamic State, that the Islamic State is waiting to fight United States combat forces. During various conversations recorded by CW, Qamar discussed videos produced by the Islamic State that Qamar had viewed online. Qamar told CW that he had seen "Flames of War" numerous times.

8. Qamar told CW about a video he saw where an individual was executed by being run over by a tank; Qamar said that he watched it five times and that it was beautiful.

9. On November 14, 2015, Qamar spoke to CW regarding the attacks that occurred in Paris, France on November 13, 2015. Qamar stated that when he heard the statement by the spokesman for ISIL taking credit for the attacks, he was "giddy." Qamar stated that he admired lone wolf attackers because they love Islam so much that they are willing to die as martyrs for Islam. In the same conversation, Qamar and CW discussed suicide bombings. CW said that he did not believe in suicide bombings, but Qamar responded "I believe in it 100%."

10. On November 20, 2015, Qamar asked CW if CW would ever use a table saw to behead someone. CW responded that he could not do so. Qamar made the noise of a saw and said that he would love to do it, and that he would do it for fun. Qamar stated that he could think of so many creative ways to behead someone. Qamar told CW that he (Qamar) likes carnage.

11. On April 2, 2016, Qamar told CW about how some Sunni Muslims blame their women for being raped. When CW asked Qamar what Qamar would like to do to those people, Qamar said "stick a fucking knife, and just make a slurpee out of their blood." Qamar added, "I'd love to drink a blood slurpee, little bit uh, sugar cane juice in it, perfect."

4

Argument

The nature and circumstances of the defendant's offense, as well as the value of general deterrence, warrant a long jail sentence in this case. Beyond that, however, the need to protect the public from this defendant calls for even a longer one.

The Court should first calculate what the punishment for Qamar would be were the sole relevant conduct his attempt to provide personnel to ISIS in 2014 by attempting to join ISIS himself. The punishment for that attempt to join ISIS in 2014 should be tempered by the fact that Qamar did not actually leave the country in 2014. In making that calculation, however, the Court should recognize that Qamar's prodigious blogging on behalf of ISIS in 2014 and 2015 show that his failure to join ISIS in 2014 was attributable to his family's intercession, and not the result of a change of his own heart. Moreover, the Court should recognize that the government had no part in Qamar's attempt to join ISIS in 2014; indeed, the government had no knowledge of it until Qamar spoke of it to CW the following year.

Once the Court has calculated an appropriate punishment for Qamar's attempt to provide personnel to ISIS in 2014, it should consider how that punishment should be enhanced for Qamar's completely separate attempt to provide money to ISIS in 2016. Admittedly, the amount of money at stake was small. At the same time, however, the Court should recognize that the small amount that Qamar attempted to send to ISIS was large in relation to his discretionary income.

5

Finally, once the Court has calculated an appropriate punishment for Qamar's attempt to provide personnel to ISIS in 2014, and an appropriate punishment for his attempt to provide money to ISIS in 2016, it should consider how those punishments should be enhanced for Qamar's attempts to send photographs to ISIS for use in an on-line magazine designed to encourage lone-wolf attacks in 2016. Qamar's attempts to terrorize his neighbors and the members of this community demand punishment significantly harsher than that which might be required by more prosaic attempts to send money to ISIS or even join ISIS overseas.

In sum, the punishment that Qamar deserves is that which he deserves for attempting to join ISIS in 2014, *plus* that which he deserves for attempting to send money to ISIS in April 2016, and *plus* that which he deserves for attempting to send photographs to ISIS in May and June 2016 for use in terrorizing the residents of this community. The punishment that Qamar deserves is all that - - *plus* that which he deserves for extolling depravity that, given the chance, would destroy Western civilization.

We recognize that Qamar's attempt to join ISIS in 2014 was aborted after he purchased an airline ticket to Turkey but before he ever reached the airport to leave the United States. We further recognize that Qamar's attempt to provide funds to ISIS in April 2016 consisted of a small amount of money. Finally, we recognize that the photographs that Qamar attempted to provide to ISIS in May and June 2016 were not of a kind different from those that ISIS could have obtained easily anyway. All that recognition aside, however, it is still true that Qamar consistently attempted to support ISIS in every way that he could over the course of two years - - and in spite of the best efforts of his family to get him to change course. In sum, his conviction is assuredly not the result of straying from the right path in a moment of weakness. Instead, his

6

conviction is the result of his consistent choice over a period of years - - and in the face of the opposition of his family - - to try to throw in his lot with the savages that would destroy our civilization if given the chance.

Qamar may sincerely regret his actions today, and we hope he does.  His plea of guilty and his acceptance of responsibility for his actions are certainly steps in the right direction.  The facts show, however, that Qamar is not simply a misguided individual who chose to support the Islamic State on a whim; to the contrary, he maintained his support for the Islamic State over a period of years.  Moreover, while he surely was misguided, it was not for the lack of a caring family trying to keep him straight.

The unfortunate fact is that Haris Qamar appears to have an attraction to barbarism and depravity that cannot be rationally explained.  Even if for no other reason, a long term of incarceration should be imposed against him to protect the public from the possibility that the next time someone solicits his help in furthering the goals of depraved barbarians, it won't be the FBI doing so in an undercover capacity.

<u>Conclusion</u>

Qamar hoped to support the Islamic State by sending it money.  Further, he hoped to terrorize the residents of Northern Virginia by sending to the Islamic State photos of landmarks in Northern Virginia and Washington, D.C. for inclusion in Islamic State publications.  He failed to achieve his goals through no second thoughts on his part, but only because the person he counted on to send the money and the photos to the Islamic State was, in fact, a government agent.

Through his conduct, Qamar attempted to strike at the heart of the safety of our community and nation. There is no antidote to the unfathomable bloodlust and attraction to depravity deep within him. As a result, only a long term of imprisonment can promote respect for the law; reflect the seriousness of the offense; afford adequate deterrence to criminal conduct; protect the community; and provide just punishment for his offense.

Respectfully submitted,

Dana J. Boente
United States Attorney

_____/s_____

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

8

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2017, I electronically filed the foregoing POSITION

OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS with the Clerk of

Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel

of record.

                                                /s

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov